IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES GARNER | : | NO. 15-88 |

MEMORANDUM

Bartle, J.                                                                                   March 2, 2021

        Before the Court is the motion of James Garner for compassionate release under 18 U.S.C. § 3852(c), as amended by Section 603 of First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5239 (Dec. 21, 2018), as well as under 18 U.S.C. 3624(c) as modified by Section 12003(b) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 515-17 (Mar. 27, 2020).  The Government opposes the motion on the ground that Garner has not demonstrated extraordinary and compelling reasons warranting his release under 18 U.S.C. § 3852(c)(1)(A)(i), and the Court does not have the authority to transfer a prisoner into home confinement under the CARES Act.

I

        In February 2015, Garner and a co-defendant, Rubin Marshall, planned to rob at gunpoint a community bank in Stowe, Pennsylvania.  Garner asked a third man for help to plan and execute the robbery.  He did not know the man was a confidential source for the FBI.  Garner visited the vicinity of the bank with

the source, explained the escape route to the source, and directed the source to conduct further surveillance of the bank to determine the arrival time and characteristics of its employees, including their ages and genders.

Garner and Marshall later met with the source and discussed the results of his surveillance. At that meeting, Marshall told Garner and the source that he would be armed during the robbery. Marshall explained that if the police surrounded the defendants, they would need to "bring the EMT" because they "gonna drop." Garner told the source that he and Marshall had performed other robberies which, together with two other planned robberies, would total ten robberies committed together.

On the night before Garner intended to rob the community bank, he told the source that he was "going to go around to my old spot and get the equipment for tomorrow and just bring it back to the house." The source drove to pick up Garner after he collected the equipment. FBI SWAT agents approached and arrested Garner just after he entered the source's car. At the time of his arrest, Garner was wearing a backpack containing four ski masks, a loaded Smith & Wesson .38 caliber revolver, ammunition, a set of handheld two-way radios, and several gloves.

On March 10, 2015, a federal grand jury indicted Garner for conspiracy to commit bank robbery in violation of 18 U.S.C. § 2113(a) and (d), attempted bank robbery in violation of 18

U.S.C. § 2113(a), and possession of a firearm in furtherance of a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1) and 2.  Garner pleaded not guilty.  He was convicted on all counts on April 21, 2016 after a jury trial presided over by Judge Robert F. Kelly.

On January 20, 2017, Judge Kelly sentenced Garner to concurrent 41-month sentences on his convictions for conspiracy and attempted bank robbery and a mandatory 60-month consecutive sentence on his conviction for possessing a firearm in furtherance of a crime of violence.  Garner received a total sentence of 101 months.

Garner is currently incarcerated at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix").  He has served 72 months of his sentence and is credited 6 months of good time.  His prison record shows several infractions, including an infraction for falsely claiming to have COVID-19 symptoms.  None of the infractions appears to be violent in nature.

Garner asserts in the pending motion for compassionate release that: his "physicians directed that he receive follow-up care and be placed on the chronic care patient list, [but] such care is repeatedly delayed and/or difficult to obtain"; he "continues to suffer from problems associated to his diagnosis of High Cholesterol, and hypertension and is currently taking medication for it and is at the age of 45"; and he is "at risk of

contracting, and experiencing serious complications from, COVID-19 if he remains housed at FCI Fort Dix . . . [where he] spends most of his time each day in a 12 man cell that is barely large enough for a single occupant and social distancing is impossible as so stated by the Warden."

II

Section 3582(c)(1)(A)(i), as amended by Section 603 of the FSA, provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) <u>extraordinary and compelling reasons warrant such a reduction</u> . . .
>
> <u>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission</u> . . .

18 U.S.C. § 3582(c) (emphasis added).

Section 3582(c) does not identify what constitute "extraordinary and compelling reasons" for compassionate release.

Instead, it directs that the United States Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction." 18 U.S.C. § 994(t).

Following this directive, the Sentencing Commission promulgated the Policy Statement set forth in § 1B1.13 of the United States Sentencing Guidelines ("USSG"). Section 1B1.13 states that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the Court determines that—
>
>   (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
>   (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>   (3) The reduction is consistent with this policy statement.

The Sentencing Commission identified "extraordinary and compelling reasons" for compassionate release in Application Note 1 to USSG § 1B1.13:

> **1. Extraordinary and Compelling Reasons.**-- Provided the defendant [is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g)], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**--
>
> (i) The defendant is suffering from a terminal illness . . . . (ii)(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> **(C) Family Circumstances.**—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner

>when the defendant would be the only
>available caregiver for the
>spouse or registered partner.
>
>**(D) Other Reasons.**--As determined by the
>Director of the Bureau of Prisons, there
>exists in the defendant's case an
>extraordinary and compelling reason other
>than, or in combination with, the reasons
>described in subdivisions (A) through (C).

III

According to Garner's medical records, he is 46 years old. He is obese and has a history of cigarette smoking. He also suffers from high blood pressure and high cholesterol. These are all conditions the Centers for Disease Control and Prevention warn increase or might increase the risk of severe illness from the virus that causes COVID-19.

Along with numerous other encounters with healthcare providers, Garner visits annually with physicians at a Bureau of Prisons Chronic Care Clinic. He receives treatment for his medical conditions, including medication for his high blood pressure and high cholesterol. He is fully ambulatory and engages in the normal activities of day-to-day life at FCI Fort Dix. He also received tests for the coronavirus on December 3, 2020, December 16, 2020, and January 6, 2021, all of which had a negative result.

The Court sympathizes with the increased risk of severe illness that Garner's medical conditions present should he contract COVID-19. However, the conditions are not so serious as

to diminish substantially Garner's ability to provide self-care while continuing to serve his sentence. As our Court of Appeals has stated, the "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." United States v. Roeder, 807 F. App'x 157, 161 n. 16 (3d Cir. 2020).

Even if Garner's medical condition were an extraordinary and compelling reason to grant him compassionate release, the Court must still consider the factors set out in 18 U.S.C. § 3553(a) where applicable. See 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.

Garner planned to execute a bank robbery with co-defendant Marshall who shared with Garner his intent to carry a gun and to start a firefight should the defendants be surrounded by police during their escape. Garner told the FBI source that he had committed or was planning to commit ten robberies with Marshall including the community bank robbery. The night before he planned to rob the community bank, Garner was arrested with a bag packed with masks, gloves, two-way radios, and a revolver with ammunition. It is imperative that the Court protect the public from further crimes of the defendant and that he continues to serve his sentence to reflect the seriousness of his offenses. We

find the applicable Section 3553(a) factors weigh against Garner's release.

IV

Garner also appears to seek early release into home confinement under 18 U.S.C. 3624(c) and the CARES Act.

Section 12003(b) of the CARES Act permits the Bureau of Prisons, in light of the global coronavirus pandemic, to lengthen the maximum amount of time an inmate may be released early into home confinement under 18 U.S.C. 3624(c).  See United States v. Mansaray, Criminal Action No. 13-236, 2020 WL 3077184, at *1 (E.D. Pa. June 10, 2020).  The Court does not have the authority to release inmates early into home confinement under the CARES Act. This discretion rests solely with the Attorney General and the Bureau of Prisons.  United States v. Garcia, Criminal Action No. 09-224-01, 2021 WL 719763, at *6 (E.D. Pa. Feb. 23, 2021); United States v. Mansaray, Criminal Action No. 13-236, 2020 WL 3077184, at *1 (E.D. Pa. June 10, 2020).

For these reasons, we will deny the motion of Garner for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and for early release into home confinement under Section 12003(b) of the CARES Act.